# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES,

                 Plaintiff,

v.

DEMARIO M. ROBINSON,

                 Defendant.

Case No. 23-CR-212-JPS

**ORDER**

## 1. INTRODUCTION

In November 2023, a grand jury indicted Defendant Demario M. Robinson ("Defendant") on six counts: one of being a felon in possession of a firearm; one of knowingly possessing a modified machine gun; one of possessing with intent to distribute a mixture and substance containing marijuana; and three of fraudulently and knowingly receiving, buying, or facilitating the transport of machinegun conversion devices. ECF No. 8.

In March 2024, Defendant moved to suppress "all evidence obtained from two cellular telephones recovered during the search of 6537 N. Beale St., # 5, Milwaukee, Wisconsin, [the "Residence"] on June 20, 2023." ECF No. 27 at 1. Magistrate Judge William E. Duffin recommended that Defendant's motion to suppress be denied. ECF No. 36. Defendant has objected to the recommendation. ECF No. 38. For the reasons discussed herein, the Court will overrule Defendant's objection and adopt the report and recommendation.

2.  **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, this Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. The Court's review encompasses both the magistrate's legal analysis and factual findings. *Id*.; *see also* Fed. R. Crim. P. 59(b).

3.  **BACKGROUND**[1]

In March 2023, case agents spoke with an informant ("CS1") who told them that Defendant was a member of the "Get Back Gang" ("GBG"), a Milwaukee-based criminal organization involved in gun trafficking. ECF No. 27 at 2. CS1 told the agents that CS1 knew of a GBG member who possessed full auto switches that he'd received from "Rio," and that CS1 had seen "Rio" install a full auto switch on a gun within the last six months. *Id*. Law enforcement shortly thereafter executed a search warrant in Milwaukee and found, inter alia, a handgun with a full auto switch and six other switches. *Id*. Then, on May 16, 2023, agents executed another search in Milwaukee, finding another firearm with a full auto switch, extended magazines, and ammunition. *Id.*

The following day, law enforcement interviewed a defendant charged with firearms violations stemming from these two searches. *Id.* That defendant told law enforcement that he knew about the auto switches

---

[1] Magistrate Judge Duffin did not make any factual findings or include a factual background section in his recommendation and order. ECF No. 36. Accordingly, the Court draws the information in this section from the parties' submissions.

seized during the searches and that they were obtained from "Rio." *Id.* Milwaukee Police Officer Nesrodene Ghassoul ("Officer Ghassoul")—the affiant of the relevant search warrants here at issue—knew "Rio" to be Defendant. *Id.*

In early June 2023, law enforcement interviewed a second man associated with the evidence seized during the two searches. *Id.* at 2–3. That man told law enforcement that another man told him he'd gotten the seized switches from "Robinson." *Id.* at 3. Law enforcement connected the names "Rio" and "Robinson" with Defendant, and CS1 identified Defendant's recent booking photo as "Rio." *Id.*

Around that same time, U.S. Customs and Border Protection searched a package that arrived from China.[2] *Id.* The package contained 39 full auto switches and was addressed to "Mar Marvell" at the Residence. *Id.* Its shipping information also included the phone number 414-779-5689, which was later connected to Defendant's cell phone (the "Target Cell Phone"). ECF No. 30 at 3, 8. Office Ghassoul learned that only Defendant and his mother were formally associated with the Residence, ECF Nos. 27 at 3 and 27-1 at 20, and Defendant represents that his mother is deceased, ECF No. 35 at 6, making Defendant the only living person formally associated with the Residence.

Officer Ghassoul reviewed Defendant's criminal history, discovering that as of June 1, 2023, Defendant was a convicted felon. ECF No. 27 at 4. He also learned that on May 26, 2023, officers responded to a call that a firearm had been discharged from the Residence, at which time

---

[2]This search is not challenged, so the Court does not elaborate on it or describe its statutory justification.

officers forced entry into the Residence and discovered identifiers for Defendant, as well as a 30-round extended magazine and a plastic rifle magazine, both with unspent rounds. *Id.* Law enforcement also saw photos of Defendant with money and guns posted in June 2023, taken from the Residence, on Defendant's public Instagram.[3] *Id.*; ECF No. 30 at 8. Then, on June 14, 2023, while conducting surveillance of the Residence, a task force officer saw Defendant leave the Residence with what the officer believed was a black handgun with an extended magazine in the waistband of his pants, as well as with a Ziplock type baggie containing what the officer believed to be marijuana. ECF No. 27 at 4.

On June 16, 2023, Officer Ghassoul applied for a warrant to search the Residence. *Id.* The application represented that officers would be searching for evidence of the offenses of transfer or possession of machinegun (under 18 U.S.C. § 922(o)), prohibited person in possession of firearms or ammunition (18 U.S.C. § 922(g)), and conspiracy to possess with intent to deliver controlled substances (21 U.S.C. §§ 841 and 844)). *Id.* at 4–5. Attachment B of the warrant listed the items "[t]o be seized" as including "[c]omputers, cellular telephones, or storage media used as a means to commit the violations described above," *id.* at 5, as well as seizure from those devices of the "records and information" contained therein, ECF No. 27-1 at 5–6. In his affidavit in support of the warrant application, Officer Ghassoul wrote that, based on his training and experience, those involved in illegal firearm possession and trafficking regularly use cell phones to communicate with customers and related parties, as well as to take photos

---

[3] Defendant writes that these photos were posted "June 11, 2013," ECF No. 27 at 4, but it appears that this was a typo intended to read "June 11, 2023."

and videos of themselves, their associates, and the illegal substances and firearms that they possess and sell. ECF No. 27-1 at 10–11.

Officer Ghassoul also applied for, and was granted, a search warrant for "[r]ecords and information associated with the cellular device assigned call number (414) 779-5689 [the Target Cell Phone], . . . in the custody or control of AT&T." ECF No. 30-2 at 1, 3. Officer Ghassoul wrote in support of that warrant application that the phone number 414-779-5689 was associated with the seized package. ECF No. 27 at 3. Law enforcement learned through a reverse lookup that the Target Cell Phone number was listed to Defendant at 3507 N. 37th Street, Milwaukee, Wisconsin. *Id.* Law enforcement also learned that from late May to mid-June, recorded jail calls were made to that number, including by Defendant's girlfriend, Starr Hering ("Hering"). *Id.* at 3–4. The warrant application stated that Hering was associated with the 3507 N. 37th Street address through a family member. *Id.* at 4.

Magistrate Judge Steven C. Dries signed both warrants on June 16, 2023—the same day of their application. *Id.* at 5. Law enforcement executed the search of the Residence on June 20, 2023. *Id.* Prior to entry, "officers observed someone throw a pistol from an upstairs window of the [Residence]" which was "determined to be a stolen Glock 19 Gen 5 pistol, equipped with an extended magazine, and modified to fire in a fully automatic manner." ECF No. 30 at 3. Present at the Residence at the time of the search was Defendant, his brother Diquar Henley ("Henley"), and Hering. *Id.* During the search, law enforcement recovered, inter alia, a Glock 19 handgun, an extended magazine, several auto conversion devices, unspent firearm rounds, marijuana, suspected cocaine, a scale, identifiers,

and five cell phones. ECF No. 27 at 5. Officers arrested Defendant during the search. *Id.* at 5–6.

Of the five cell phones found, one was a blue Apple iPhone 13—the Target Cell Phone. *Id.* at 5; ECF No. 30 at 3. The Target Cell Phone was found on Defendant's person. ECF No. 30 at 3. Law enforcement sought no other separate warrant to seize and search any particular cell phone other than the Target Cell Phone, and the search warrant application mentioned no other phone number. ECF No. 27 at 5. Nevertheless, in addition to searching the Target Cell Phone, law enforcement also searched two other cell phones discovered at the Residence: a white Apple iPhone 11 and a blue Apple iPhone XR. *Id.* The white iPhone 11 was discovered in a room along with a backplate for a firearm, a .22 caliber casing, another cell phone, and identifiers for Henley, while the blue iPhone XR was found in a room with identifiers for Defendant, clothing and jewelry that Defendant had been observed wearing, firearm parts, ammunition, a machinegun conversion device, another cell phone, and THC. ECF No. 30 at 4. Further, the room of the Residence from which a firearm had been thrown from the window was determined to be that containing the blue Apple iPhone XR. *Id.*

Forensic analysis of the Target Cell Phone revealed communications between Defendant and others regarding hundreds of machine conversion devices that Defendant had allegedly been smuggling into the U.S. from China. *Id.* Analysis of the other two iPhones similarly revealed inculpatory materials, including photos of Defendant with firearms, photos of marijuana, a video of Defendant shooting a fully automatic rifle, and communications referencing switches. *Id.* at 5. However, the Government concedes that extractions from these two iPhones "suggest [that] those

phones were not possessed by" Defendant, although the phones were not taken "from the person of" Hering or Henley. *Id.* at 5, 9.

4. **LAW AND ANALYSIS**

   4.1 **The Parties' Arguments**

   In his motion to suppress all evidence obtained from the iPhone 11 and iPhone XR, Defendant argues that "the warrant failed to sufficiently connect the items to be seized and later searched . . . to the alleged firearm offenses"—i.e., that it "failed to set forth probable cause for the seizure and searches of" those two phones. ECF No. 27 at 6. He argues that "the warrant for the [Residence] failed to identify particular cell phones or applications/data on those phones to be seized and searched." *Id.*; *id.* at 7 ("While [Officer] Ghassoul's warrant application contains a broad request to search any 'computer' (which contains cell phones) for all manner of information . . . , it contains no particular basis to search *these* two phones."). The warrant "fail[s] to describe, with particularity," Defendant continues, "the items to be seized by their relation to designated crimes and in so doing [fails to] adequately limit[] the executing agents' discretion." *Id.* at 10 (quoting *United States v. Manafort*, 323 F. Supp. 3d 795, 802 (E.D. Va. 2018)) (bracketed modifications added by Court). It did not, Defendant contends, "adequately 'confine[] the executing [officers'] discretion by allowing them to seize only evidence of [] particular crime[s].'" *Id.* at 11 (quoting *United States v. Cobb*, 970 F.3d 319, 328 (4th Cir. 2020) and citing *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017)).

   Defendant analogizes his situation to that in *Griffith*, 867 F.3d 1265. *Id.* at 9. In *Griffith*, the court found that an affidavit in support of an application to search a suspect's apartment fell below the probable cause standard, writing that "[t]he affidavit supporting the warrant application

Page 7 of 17
Case 2:23-cr-00212-JPS   Filed 06/06/24   Page 7 of 17   Document 41

provided virtually no reason to suspect that Griffith in fact owned a cell phone, let alone that any phone belonging to him and containing incriminating information would be found in the residence." *Id.* (quoting *Griffith*, 867 F.3d at 1270). "So too here for the iPhone 11 and the iPhone XR," Defendant writes. *Id.*

In opposition to the motion to suppress, the Government argues that the search warrant "demonstrates a nexus between the cell phones seized and firearm trafficking," in part because it is supported by Officer Ghassoul's affidavit attesting to individuals' use of cell phones in firearm trafficking. ECF No. 30 at 6. "Based on [Officer] Ghassoul's investigation and training, the [R]esidence reasonably was believed to house, among other things, multiple cell phones connected with the crimes being investigated." *Id.* at 8; *id.* at 11 ("Because of the strong evidence of criminal activity conducted by [Defendant] based out of that residence, it was reasonable to conclude that cell phones found within th[e] [R]esidence were connected to the crimes under investigation."). Further, the Government argues, the warrant and supporting materials specified "where law enforcement can look within the applications and locations contained on a cell phone"—for example, it authorizes the search for text messages, digital and video recordings, as well for records of who used, owned, or controlled the device. *Id.* at 8–9.[4]

---

[4] The Government also argued that Defendant lacks a protected Fourth Amendment interest in the challenged phones and therefore cannot seek suppression of the materials recovered therefrom. ECF No. 30 at 5–6 (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). Magistrate Judge Duffin rejected that argument because "the [G]overnment offers no authority to support its contention . . . ." ECF No. 36 at 3. The Court ultimately agrees with Magistrate Judge Duffin that the motion to suppress fails on its merits, and so the Court discusses the standing argument no further.

### 4.2 The Report and Recommendation

In his report and recommendation, Magistrate Judge Duffin began by emphasizing that the warrant to search the Residence explicitly authorized "the seizure and search of any cell phone that officers found," which "is generally sufficient under the Fourth Amendment." ECF No. 36 at 1–2 (citing *United States v. Spears*, 965 F.2d 262, 277 (7th Cir. 1992); *United States v. Somers*, 950 F.2d 1279, 1285 (7th Cir. 1991); and *United States v. Prewitt*, 553 F.2d 1082, 1086 (7th Cir. 1977)).

Magistrate Judge Duffin agreed with the Government that suppression was not appropriate, noting that the Supreme Court has never held that cell phones are "subject to any sort of enhanced warrant requirement" *Id.* at 3 (citing *United States v. Vizcarra-Millan*, 15 F.4th 473, 504 (7th Cir. 2021)). Since the challenged cell phones were not found on the persons of Henley or Hering, "as a practical matter the only way for law enforcement to identify who owned each phone, or [to identify] if a particular phone is one identified in the warrant, is through some manner of a search." *Id.* at 4 (citing *United States v. Sam*, No. CR19-0115-JCC, 2020 U.S. Dist. LEXIS 87143, at *4–5 (W.D. Wash. May 18, 2020); *Arizona v. Hicks*, 480 U.S. 321, 326 (1987); and *Vizcarra-Millan*, 15 F.4th at 503).

Magistrate Judge Duffin also rejected Defendant's attempt at comparing the circumstances to those in *Griffith*: unlike in *Griffith*, he wrote, "the affidavit contained specific details regarding [Defendant's] connection to cellular phones." *Id.* at 5 (citing *Griffith*, 867 F.3d 1265). And "[t]hat investigators believed [Defendant] to have used a certain phone assigned a particular number does not mean that there was no probable cause to search any other phone." *Id.* "To the contrary," the likelihood that one phone contained evidence "tended to provide a basis for suspecting that there

would be evidence on any phone found at [Defendant's] home" because "[c]riminals engaged in the sale of contraband often employ multiple phones in their trade." *Id.* at 5–6 (citing *United States v. White*, 95 F.4th 1073, 1077 (7th Cir. 2024) and *In re Use of a Cell-Site Simulator to Identify a Cellular Device in a Narcotics Trafficking Case*, 623 F. Supp. 3d 888, 894 (N.D. Ill. 2022)). Magistrate Judge Duffin also noted that Defendant had posted incriminating photos on Instagram, a social media platform which is generally accessed by cell phone, so "investigators had probable cause to search devices associated with [Defendant] for data identifying the device from which the incriminating Instagram post originated . . . ." *Id.* at 6.

### 4.3 Analysis

"An affidavit submitted in support of a warrant application 'need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *Vizcarra-Millan*, 15 F.4th at 501 (quoting *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010)). "Probable cause is a common-sense standard, and [higher courts] give deference to an issuing judge's assessment." *Id.* (citing *United States v. Bacon*, 991 F.3d 835, 840 (7th Cir. 2021)). The probable cause determination is "non-technical" and is "based not on individual facts in isolation but on the totality of the circumstances known at the time a warrant is requested." *Aljabari*, 626 F.3d at 944 (citing *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999)).

The Court will begin by rejecting Defendant's argument that suppression is required because "the warrant . . . failed to identify particular . . . applications/data on those phones to be seized and searched." ECF No. 27 at 6. A warrant is not necessarily rendered "too general" merely because

it authorizes law enforcement "to look at every file on [a seized] phone." *United States v. Bishop*, 910 F.3d 335, 336 (7th Cir. 2018). "If the possible existence of unrelated materials were enough to invalidate a warrant, computer searches would be impossible in drug cases, financial fraud cases, . . . and a host of others." *Archer v. Chisholm*, 870 F.3d 603, 617 (7th Cir. 2017). The Seventh Circuit has analogized the cell phone to a filing cabinet: "as with filing cabinets, the incriminating evidence may be in any file or folder." *Bishop,* 910 F.3d at 337. It is therefore enough "if the warrant cabins the things being looked for by stating what crime is under investigation." *Id.* The warrant in this case does so.

Such a warrant may be deemed "too general" "only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation." *Id.* (citing *United States v. Vitek Supply Corp.*, 144 F.3d 476, 482 (7th Cir. 1998) and *United States v. Bentley*, 825 F.2d 1104, 1100 (7th Cir. 1987)). "So if the police had known that [the defendant] kept all of his files about the [offense] in a particular cabinet, failure to identify that cabinet in the warrant would . . . violate[] the constitutional particularity requirement." *Id.* at 337–38. This exception does not save Defendant's argument; Defendant does not here suggest that law enforcement knew where, specifically, all incriminating information in the phones would be located, but nevertheless sought to access other locations in the phone.

The Court will similarly reject, as Magistrate Judge Duffin did, Defendant's argument that the warrant failed to sufficiently connect the items to be seized—specifically, cell phones beyond the Target Cell Phone—to the alleged offenses. The "common-sense, non-technical"

approach to the probable cause analysis requires that determination. *Aljabari*, 626 F.3d at 944 (citation omitted).

First, as Judge Duffin notes, and as Officer Ghassoul averred, those engaged in the criminal activity of trafficking contraband regularly employ multiple phones in their trade. ECF No. 36 at 5; *see, e.g., United States. v. Paulette*, No. 14-CR-30152-1-NJR, 2015 U.S. Dist. LEXIS 101167, at *45 & n.18 (S.D. Ill. Aug. 3, 2015) ("It is well-established that . . . traffickers often have more than one cell phone.") (collecting cases); *House v. Cleland*, No. 19-CV-397, 2021 U.S. Dist. LEXIS 79951, at *16 (E.D. Wis. Apr. 27, 2021) (same) (citing *Paulette*, 2015 U.S. Dist. LEXIS 101167). Neither the investigation preceding the search of the Residence nor the search itself eliminated that likelihood in this case. To the contrary, law enforcement had good reason to believe that Defendant was engaging in trafficking of contraband on a relatively large scale, such that the use of multiple cell phones on Defendant's part could be considered warranted and reasonable. Law enforcement also saw photos depicting criminal activity posted on Defendant's Instagram from inside the Residence a mere week before executing the search of the Residence. ECF No. 27 at 4. Common sense in the modern age dictates that such photos were almost certainly posted from a cell phone, *see United States v. Reichling*, 781 F.3d 883, 887 (7th Cir. 2015) (citing *United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012)), and law enforcement did not necessarily know that such photos were taken or posted by the Target Cell Phone specifically. Nor does it appear from the record that law enforcement even knew what the Target Cell Phone looked like, or what model it was, until they later confirmed that the phone they had seized from Defendant's person was, in fact, the Target Cell Phone. ECF

No. 30 at 9 (noting that the cell phone found on Defendant's person was only *later* identified as the Target Cell Phone).

Moreover, when law enforcement executed the search, neither of the cell phones subject to this motion were discovered on anyone's person, therefore legitimizing the possibility that those phones could additionally belong to Defendant. After all, Officer Ghassoul had determined that only Defendant and his mother were formally associated with the Residence, and Defendant's mother is deceased, so it would be entirely reasonable to suspect that cell phones found in the Residence and not on anyone else's person would belong to Defendant. This was not, as the Government notes, a situation in which the challenged phones were "seized from the pocket of" Hering or Henley such that they obviously were not Defendant's. ECF No. 40 at 9. There were, moreover, five cell phones discovered in the search—two more than the number of people in the Residence at the time of the search, and four more than the number of living people who were known to be formally connected to the Residence—further supporting the likelihood of Defendant having more than one phone, as well as the likelihood that any of those discovered could have been his. *See United States v. Rolack,* No. 22-cr-320-wmc-2, 2023 U.S. Dist. LEXIS 26128, at *12 (W.D. Wis. Jan. 26, 2023) ("In this case, both [law enforcement's] probable cause showing and the warrant actually issued . . . allowed the police to seize any cell phone in the residence that could have data or communications associated with [the offense] for which [the phone owner/suspect] was under investigation . . . . [T]here would have been no readily discernible characteristics on any cell phones . . . found at [the defendant's] residence that would have enabled the police to identify which

of them contained this information, and which did not." (citing *Bishop*, 910 F.3d at 336 and *Vitek Supply*, 244 F.3d 476)).

According to the Government, the two challenged phones were found in separate rooms of the Residence, each of which contained items relating to firearms and one of which contained multiple identifiers for Defendant, further legitimizing the possibility that the phones recovered were owned or used by Defendant and were connected to the crimes charged. It was also from that latter room, in which identifiers for Defendant and two cell phones were found, that officers observed a firearm tossed out the window just prior to their entry to the Residence. The search itself, therefore, did nothing to dispel the very reasonable possibility that Defendant possessed more than one cell phone; if anything, it solidified that possibility. And while law enforcement knew that the Target Cell Phone was connected to Defendant, that did not eliminate the likelihood that Defendant also used other cell phones with respect to the offenses charged, and nothing leading up to or during the search of the Residence suggested otherwise.

The Court, like Judge Duffin, is not convinced by Defendant's attempts to compare his circumstances to those in *Griffith*. In *Griffith*, the affidavit in support of the warrant to "search for and seize all cell phones" in Griffith's residence "offered almost no reason to suspect that Griffith in fact owned a cell phone, or that any phone . . . containing incriminating information would be found in his apartment." 867 F.3d at 1268. The same is not true here.

As already noted, Officer Ghassoul stated in his affidavit that Defendant had, just a week before the search, posted on his Instagram photos of himself inside the Residence with U.S. currency and firearms.

ECF No. 27-1 at 21–22. Additionally, the shipping information for the seized package (suspected to have been intended for Defendant to be delivered at the Residence) included the phone number for the Target Cell Phone. Common sense therefore dictated that Defendant owned and used at least one cell phone. Further, Officer Ghassoul noted in his affidavit that state court records continued to list the Residence as Defendant's "current home residence," and Defendant had been observed leaving the residence (with a suspected firearm and marijuana) just days prior to the search. *Id.* at 20–21.

These circumstances allow for the reasonable inferences that Defendant not only had access to a cell phone, but that he used at least one cell phone in relation to the crimes charged in the Indictment and identified in the warrant application, and further that such phone or phones could be discovered in the Residence. *See Reichling*, 781 F.3d at 889 ("[E]xperienced investigator/affiants and reviewing magistrates are entitled to draw reasonable inferences."). The authorization to seize and search all phones on the property was not merely supported, as was the case in *Griffith*, by the fact that "most people now carry a cell phone." 867 F.3d at 1268. It was, instead, supported by the facts recounted above: that a device—almost certainly a cell phone—was used to document criminal activity on Defendant's part inside the Residence; that a phone number attributed to Defendant was connected to the concealed international shipment of contraband; and the established fact that those engaged in trafficking in contraband commonly use more than one cell phone. *Cf. id.* at 1272 ("There was no observation [recounted in the affidavit] of Griffith's using a cell phone, no information about anyone having received a cell phone call or text message from him, . . . and no indication otherwise of his ownership of

Page 15 of 17
Case 2:23-cr-00212-JPS    Filed 06/06/24    Page 15 of 17    Document 41

a cell phone at any time."); *see United States v. Grinder*, 808 F. App'x 145, 147 (4th Cir. 2020) ("Grinder relies on . . . *Griffith* . . . . [His] reliance is misplaced. In *Griffith*, the warrant authorized the seizure of 'all electronic devices' found in the identified residence, where no evidence was presented that the defendant owned a cell phone or that it would be found at the residence. . . . By contrast, here, the officers knew that Grinder had a cell phone and that he had used it to [in relation to the offense charged].") (citing 867 F.3d at 1271–75).

*Griffith* is also distinguishable because the defendant's "suspected involvement in the" offense in that case had occurred "more than one year before[]" law enforcement applied for the search warrant. 867 F.3d at 1269. Here, in contrast, the portions of the investigation the Court has herein recounted occurred, at the very latest, about two and a half months before Officer Ghassoul applied for the search warrants and were recent enough to lead Officer Ghassoul to believe that "firearms and evidence of marijuana use and possession are still present within" the Residence. ECF No. 27-1 at 22; *cf. Griffith*, 867 F.3d at 1274 ("[P]olice often might fairly infer that a suspect's phone contains evidence of recent criminal activity, . . . . But by the time police sought the warrant in this case, more than a year had elapsed since the [offense]." (citing *Riley v. California*, 573 U.S. 373, 393 (2014))).

Defendant emphasizes the "reach of modern smart phones," ECF No. 38 at 5, and it is generally true that cell phone data is entitled to heightened protection. *United States v. Wanjiku*, 919 F.3d 472, 484 (7th Cir. 2019). But as Magistrate Judge Duffin noted, the Supreme Court has held only that "cellphones are subject to the warrant requirement," not that they "are subject to any sort of enhanced warrant requirement." ECF No. 36 at 3–4 (citing *Riley*, 573 U.S. at 401; *Vizcarra-Millan*, 15 F.4th at 504; and *In re*

Page 16 of 17
Case 2:23-cr-00212-JPS    Filed 06/06/24    Page 16 of 17    Document 41

*Search Warrant Application for the Search of a Townhome Unit*, No. 29 MC 106, 2020 U.S. Dist. LEXIS 68652, at *13 (N.D. Ill. Apr. 20, 2020)). Indeed, the Supreme Court in *Riley* emphasized: "Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search . . . ." 573 U.S. at 401. That requirement was met here.

5. **CONCLUSION**

For the reasons discussed herein, the Court will overrule Defendant's objection and will adopt Magistrate Judge Duffin's report and recommendation recommending that Defendant's motion to suppress be denied.

Accordingly,

**IT IS ORDERED** that Defendant Demario M. Robinson's objection, ECF No. 38, to Magistrate Judge William E. Duffin's report and recommendation be and the same is hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Magistrate Judge William E. Duffin's report and recommendation, ECF No. 36, recommending that Defendant Demario M. Robinson's motion to suppress, ECF No. 27, be denied, be and the same is hereby **ADOPTED**; and

**IT IS FURTHER ORDERED** that Defendant Demario M. Robinson's motion to suppress, ECF No. 27, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of June, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Page 17 of 17
Case 2:23-cr-00212-JPS   Filed 06/06/24   Page 17 of 17   Document 41